MYRA JOYCE P. REBER, ADMINISTRATRIX OF THE ESTATE OF APRIL LOVE REBER, DECEASED, PLAINTIFF v. EDNA WINDOM BOOTH AND JACK C. BOOTH, JR., DEFENDANTS

No. 911SC1300

(Filed 2 February 1993)

1. **Trial § 7 (NCI3d)— stipulations as to issues at pretrial conference—no issue of last clear chance raised—refusal to submit issue at trial proper**

The trial court did not err in refusing to submit to the jury an issue as to last clear chance, since plaintiff waived this issue by stipulating at pretrial conference that the issues to be submitted to the jury were whether the decedent was killed by defendant's negligence and how much the compensatory damages should be, and the stipulation did not raise the doctrine of last clear chance.

**Am Jur 2d, Automobiles and Highway Traffic §§ 438-441; Pretrial Conference and Procedure §§ 26-29, 73-77.**

Sufficiency of evidence to raise the last clear chance doctrine in cases of automobile collision with pedestrian or bicyclist—modern cases. 9 ALR5th 826.

2. **Automobiles and Other Vehicles § 616 (NCI4th)— thirteen-year-old standing in road—contributory negligence—sufficiency of evidence**

Evidence was sufficient to support the jury's verdict that plaintiff's decedent was contributorily negligent where it tended to show that decedent, who was thirteen years old, crossed a highway at least three times late at night; decedent's friends, who were on the opposite side of the road from her, called to decedent who then stopped and put her hands on her hips; decedent looked at her friends; defendant driver and a passenger in her car both testified that decedent was standing in the travel lane; the investigating officer testified that the skid mark on the highway was in such a position that both wheels of defendant's car would have been in the travel portion of the highway; and such evidence was sufficient for the jury to find that decedent was standing in the travel portion of the highway, not paying attention to oncoming traffic, and not exercising the due care that a child of her age, capacity, discretion, knowledge, and experience would ordinarily have exercised under the same or similar circumstances.

**Am Jur 2d, Automobiles and Highway Traffic §§ 513-516.**

**Modern trends as to contributory negligence of children. 32 ALR4th 56.**

Judge WELLS dissenting.

Appeal by plaintiff from judgment filed 17 May 1991 by Judge Cy A. Grant in Dare County Superior Court. Heard in the Court of Appeals 8 December 1992.

On 11 August 1986 at approximately 11:30 p.m. Mrs. Edna Booth was driving her car South on U.S. Highway 158 By-Pass (Hwy 158) near Kitty Hawk Kites and Shops in Nags Head, North Carolina when her vehicle collided with the plaintiff's decedent, April Love Reber. April Reber died intestate on 12 August 1986 as a proximate result of the injuries she received in the collision. Plaintiff's intestate was thirteen years old at the time of her death.

REBER v. BOOTH

[108 N.C. App. 731 (1993)]

The vehicle driven by Mrs. Booth was titled jointly in the names of Mrs. Booth and her husband, Jack C. Booth, Jr.

At trial, Heather Hunt, April Reber's first cousin, testified that on 11 August 1986 she, April Reber and Angela Long decided to walk to a 7-Eleven store on the east side of Hwy 158. Kitty Hawk Kites is adjacent to the south side of the 7-Eleven store. The three walked into the 7-Eleven store, picked up various items and entered the checkout line. While in line April said she would like to purchase some doughnuts. The three did not have enough money to purchase the doughnuts so April left the store. After she left, Heather and Angela put back one of their items and bought the doughnuts that April wanted. As Angela was paying the clerk, Heather saw April cross the road, then cross back. When Heather and Angela walked outside, Heather saw April crossing Hwy 158 again. After she crossed the third time, Heather saw April standing on the west side of Hwy 158 approximately twenty feet from a pedestrian crosswalk and between the fog line and the shoulder of the road. Both Heather and Angela called to April who stopped and put her hands on her hips. Heather was talking to April across Hwy 158 when she saw headlights from an approaching southbound vehicle approximately 50 feet away. Heather saw the car strike and throw April into the air. When April landed, her body was lying across the fog line. At the time of the accident the area was very well lighted. Lights were on at the 7-Eleven store, Kitty Hawk Kites and a nearby miniature golf course. April was wearing a white sweater and a jean skirt.

Angela testified that when she exited the 7-Eleven store April was about twenty feet south of the pedestrian crosswalk walking away from her and Ms. Hunt. Angela and Heather yelled at April. April stopped, put her hands on her hips, turned around and looked at them. At that time April was standing between the fog line and the shoulder of the road. Shortly thereafter, Angela saw a car strike April and then heard brakes squeal. When April's body landed, her head was lying next to the shoulder of the road and her feet were next to the fog line. Angela also testified that "[y]ou could see very well. . . . almost perfectly from where we were standing." April was wearing a white sweater and a denim skirt.

Several other witnesses testified as to the light conditions. Richard Fulcher, a passenger in a northbound vehicle testified that the area "was fairly well lit[,]" that he spotted people standing

REBER v. BOOTH

[108 N.C. App. 731 (1993)]

on the side of the road "a long time before we got to them[;]" and that if he had known any of the people on the side of the road, he could have identified them. Iris Perry, a passenger in a southbound vehicle, testified that "[t]he light was well." Ms. Sheila Thames, Heather Hunt's mother, testified that "[t]he light was good[,]" and that "[t]he lights were coming from the golf course and from Kitty Hawk Kites and the 7-Eleven." Ms. Perry also testified that there was a misty rain earlier that evening.

Doug White, an officer employed by the Town of Nags Head, testified that he received a call about the accident at approximately 11:23 p.m. As he approached the accident scene he saw a young girl lying with her feet in the travel lane and her head just across the fog line. Lights were on in the parking lot of the 7-Eleven store but not at Kitty Hawk Kites or the golf course. "[T]he accident scene, except for the emergency vehicle light, it was very dark. And it being overcast made it seem darker." In fact, it was dark enough that the lights from the rescue vehicles had to be used so that Officer White could see what he was doing. Officer White also testified that the pedestrian crosswalk located directly in front of Kitty Hawk Kites was marked with painted white lines and a traffic sign to warn southbound motorists. Officer White further testified that a southbound motorist would be required to negotiate a right curve before getting to the accident scene. He described the curve: "I am not saying it's sharp, but it's what we call a [sic] easy curve as you ease into it." The decedent's father testified that he measured the distance from the curve to the pedestrian crosswalk and that it was one tenth of a mile between the pedestrian crosswalk and the end of the curve. The decedent's father also testified that the road was perfectly straight.

Wayne Aidoock, then a police officer for the Town of Nags Head, testified that he and Officer White drove to the accident scene together. As he approached the accident scene Officer Aidoock noticed glass fragments in the travelled portion of the highway. April was lying with her head somewhat in the sand and her feet in the travel portion of the highway. Officer Aidoock determined that the Booth's car had been moved off the road, but that a skid mark was on the pavement in the vicinity of where the Booth's vehicle had been moved from. The skid mark, 73.1 feet long, was parallel to the left hand line demarking the southbound travel lane and was in such a position that the right wheel of the vehicle would also have been in the travel lane and not to the right of

REBER v. BOOTH

[108 N.C. App. 731 (1993)]

the fog line. "[I]t was straight down the travel portion. I mean it wasn't slanted. And it wasn't off to one side and it wasn't kind of like you would normally get if a car has the brakes applied to it and they lock and it slides around. The skid mark was straight down the travel portion of the highway." Officer Aidoock did not find any skid marks in the fog lane or marks in the sand to indicate that a car had swerved off the road. Officer Aidoock did find automotive debris north of the skid mark and body fluids north of the debris. The body fluids were 68 feet south of the crosswalk and also in the travel portion of the southbound lane. The pedestrian crosswalk was marked by reflective white paint which had been painted in the form of a ladder. The right front quarter panel and the windshield of the Booth's vehicle was damaged. Mrs. Booth told Officer Aidoock that, "We struck somebody . . . . We never saw her."

Mrs. Lola Windom, the mother of Mrs. Booth and a passenger in the front seat of the Booth's car, testified that she saw April standing in the travel lane, and said, "[W]atch out" at about the time the car struck April. Either just before or when Mrs. Windom said "[W]atch out," Mrs. Booth applied the brake. When Mrs. Windom stepped out of the car she saw "little girls running up calling somebody's name saying, 'Why were you standing in the road? Why were you in the road?' "

Mrs. Booth testified that as her vehicle came out of the curve and straightened, her headlights shined on a woman standing in the travel lane of the road facing her approaching vehicle. Her mother yelled, "[W]atch out" and Mrs. Booth "went for [her] brakes at the same time everything happened." Mrs. Booth also testified "[W]hen I seen her I hit her[,]" and that the accident occurred "Spontaneously." Mrs. Booth further testified that the accident scene was very dark, and that she was driving approximately 35 to 40 miles per hour.

A jury found that Mrs. Booth was negligent and that April was contributorily negligent. Plaintiff appeals from entry of judgment on the verdict.

Twiford, Morrison, O'Neal & Vincent, by Branch W. Vincent, III and Russell E. Twiford, for the plaintiff-appellant.

Baker, Jenkins, Jones & Daly, P.A., by Ronald G. Baker and Roger A. Askew, for the defendant-appellant.

EAGLES, Judge.

[1]  Plaintiff first argues that the trial court erred by refusing to instruct the jury on the doctrine of last clear chance. Because the plaintiff has waived this issue, we do not reach its merits.

> "Unless and until the court is persuaded to modify its pretrial order, the parties are bound by their admissions and stipulations included in the order, and may not contradict its terms. They are bound by their agreement to limit the issues, and may not introduce at trial issues not among those included in the order."

*Fowler v. Johnson*, 18 N.C. App. 707, 711, 198 S.E.2d 4, 7 (1973) (quoting 3 J. Moore, Federal Practice Par. 16.19 (2nd ed. 1948), p. 1130).

In *Dawson v. Sugg*, 32 N.C. App. 650, 233 S.E.2d 639 (1977) the trial court entered an order establishing a boundary line in a property dispute by adopting the report of a court appointed surveyor. No exception or appeal was taken from the order. Subsequently, the parties entered into an "ORDER ON PRETRIAL CONFERENCE" which stipulated that the court had established the property line between the parties by adopting the report of the surveyor. The "ORDER ON PRETRIAL CONFERENCE" also contained a paragraph which set out the issues the defendants contended were pertinent to the case. Prior to introduction of evidence at trial, the trial court ruled that there was no question of fact to be submitted to the jury concerning the boundary line between the parties. The defendants excepted to the court's ruling. The report of the surveyor and the order adopting the report were read to the jury without objection. On appeal to this Court the defendants argued that the trial court erred by refusing to allow the jury to hear evidence governing the boundary dispute. This Court held:

> Had defendants properly followed through on the denials set forth in their answer, they would have been entitled to present evidence with regard to, and have the jury pass upon, the location of the boundary line. But we think the defendants waived that right.
>
> . . . [T]he fact remains that the trial court's order of 30 September 1975 adopting the report of the surveyor and establishing the true boundary line became a valid and binding order when it was not challenged by defendants. They did

not except to or appeal from the order. Furthermore, they stipulated the provisions of the Order in the "ORDER ON PRETRIAL CONFERENCE." In addition to that, at the pretrial conference they did not contend that they were entitled to an issue on the question of boundary location and the court submitted issues as contended by defendants.

We hold that defendants waived the rights they now attempt to claim. . . .

*Id.* at 654-55, 233 S.E.2d at 642.

Here, the "ORDER ON PRE-TRIAL CONFERENCE" states in pertinent part:

Pursuant to the provisions of Rule 16 of the North Carolina Rules of Civil Procedure, and Rule 7 of the North Carolina Rules of General Practice, a final Pre-Trial Conference was held in the above-entitled cause at which the undersigned counsel for all parties appeared; and as a result of this conference, stipulations were entered and matters were determined as follows:

\* \* \*

16. The Plaintiff contends that the contested issues to be tried by the jury are as follows:

(a) Was the death of the Plaintiff's intestate, April Love Reber, caused by the negligence of the Defendants?

(b) What amount of compensatory damages is the Plaintiff entitled to recover from the Defendants?

This stipulation does not raise the doctrine of last clear chance. The trial court submitted issues to the jury as requested by the plaintiffs, together with an instruction on contributory negligence. Accordingly, we find no abuse of discretion or error of law in the trial court's refusal to submit an issue to the jury based on the doctrine of last clear chance. *E.g., Dawson v. Sugg*, 32 N.C. App. 650, 233 S.E.2d 639 (1979); and *Fowler v. Johnson*, 18 N.C. App. 707, 198 S.E.2d 4 (1973).

[2] Plaintiff next argues that the evidence at trial was insufficient to support the jury's verdict. Specifically, plaintiff argues that a child between the ages of 7 and 14 is presumed to be incapable of contributory negligence and may not be held contributorily

negligent as a matter of law, and that the defendants failed to present evidence from which the jury could have found that April "did not in fact use that care which a child of [her] age, capacity, discretion, knowledge and experience would ordinarily have exercised under the same or similar circumstances." We disagree.

Heather testified that she saw April cross Hwy 158 at least three times. Heather and Angela both testified that when they called April, April stopped and put her hands on her hips. Angela also testified that April looked at them. Mrs. Booth and Mrs. Windom both testified that April was standing in the travel lane. Officer Aidoock testified that the skid mark on the highway was in such a position that both wheels of Mrs. Booth's vehicle would have been in the travel portion of the highway. This evidence was sufficient for the jury to find that April was standing in the travel portion of the highway, not paying attention to oncoming traffic, and not exercising the due care that a child of her age, capacity, discretion, knowledge and experience would ordinarily have exercised under the same or similar circumstances. This assignment is overruled.

Affirmed.

Judge LEWIS concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

The majority opinion illustrates the tension between the useful and commendable resort to pretrial orders to help chart the course of civil trials, and the more universal principle that the outcome of trials should reflect the real merits of the case.

In the case now before us, the "stipulation" referred to by the majority was the contention by the plaintiff of the issues of negligence and damages, which was followed by the contention of the defendants of the issue of contributory negligence. There was no contention by plaintiff of an issue of last clear chance.

At the charge conference, however, there was extensive discussion between counsel and the court as to whether the issue of last clear chance should go to the jury. Counsel for defendants

did not mention the pretrial issues contentions, but vigorously argued that the evidence would not support an instruction as to last clear chance. Thus, there was no suggestion of unfair disadvantage to defendants by this aspect of potential variance from the contentions in the pretrial order. Under these circumstances, the pretrial order should not preclude the question of whether last clear chance was an appropriate issue to be submitted in this trial.

The evidence tended to show that after defendant Edna Booth rounded the last curve in the road between her car and the point at which April Reber was struck, there was a distance of one-tenth of a mile (i.e., at least 500 feet). The evidence also tended to show that there were no obstructions in the roadway between the Booth car and Ms. Reber. The evidence is conflicting as to the "lighting" conditions at the scene. All this leads me to conclude that the jury could have reasonably determined that Mrs. Booth could have seen Ms. Reber in her position of peril in time to avoid striking her, but failed to do so. In my opinion, all the elements of last clear chance were present in this case. *See Vernon v. Crist*, 291 N.C. 646, 231 S.E.2d 591 (1977); *McMahan v. Stogner*, 95 N.C. App. 764, 384 S.E.2d 60 (1989), *rev. denied*, 326 N.C. 49, 389 S.E.2d 91 (1990), and cases cited and relied upon therein.

For the failure of the trial court to submit and instruct upon last clear chance, there should be a new trial.